[No. H008719. Sixth Dist. July 17, 1992.]

SESHA REDDY, Plaintiff and Respondent, v.
MELLINA GONZALEZ, Defendant and Appellant.

## COUNSEL

Jesse W. Jack and Thomas P. Keegan for Defendant and Appellant.

Dennis Kollenborn for Plaintiff and Respondent.

## OPINION

**CAPACCIOLI, Acting P. J.**—A transfer from Gilbert Gonzalez to his then-wife, defendant Mellina Gonzalez, of Gilbert's interest in the family home was set aside as a fraudulent conveyance. On appeal, defendant claims that the conveyance could not have been fraudulent since the property was subject to a homestead exemption. In addition, she asserts that there was insufficient evidence to support a finding of actual fraud. For the reasons expressed below, we affirm.

### FACTS

In 1985 Gilbert was involved in an unsuccessful real estate transaction with plaintiff Sesha Reddy. Plaintiff subsequently sued Gilbert for losses incurred as a result of the transaction and obtained a judgment against him. Other than $1,300 attached from Gilbert's paychecks, plaintiff's judgment has not been satisfied. Gilbert currently has no other assets from which that judgment can be satisfied.

Defendant and Gilbert held title in joint tenancy to the family residence in Milpitas. The residence was purchased with community property funds. On March 23, 1987, Gilbert executed a deed which purportedly conveyed his interest in the residence to defendant. Defendant asked Gilbert to execute the deed "to protect the property from other parties [who] may wish to go after it because of some of [his] dealings . . ." "[T]he main concern was to protect the home from being sought after by third parties." No consideration was given for the transfer. Gilbert believed that defendant would continue to protect his interest in the property, so he continued thereafter to contribute to the mortgage payments on the house. On March 9, 1988, Gilbert executed another deed purporting to convey his interest in the residence to defendant. Gilbert understood this document to convey merely "title" but not his interest in the property. He believed that he retained an interest in the property. Gilbert continues to maintain that he has an interest in the property.

Plaintiff brought an action to set aside as a fraudulent conveyance Gilbert's transfer to defendant of his interest in the Milpitas property. The trial court set aside the two conveyances as executed in fraud of creditors.

## DISCUSSION

### A. *Potential Homestead Exemption Irrelevant*

■ Defendant asserts that the potential application of a homestead exemption to the Milpitas property negates any intent to defraud creditors. She argues that plaintiff would have been unable to obtain satisfaction of his judgment from the sale of the residence due to application of the homestead exemption and hence the conveyance did not shield any asset from creditors. We disagree.

Until 1975, universal homestead "exemptions" did not exist. (*San Diego White Truck Co.* v. *Swift* (1979) 96 Cal.App.3d 88, 91-92 [157 Cal.Rptr. 745].) Instead, protection of a dwelling could be accomplished only by execution and recordation of a "declaration of homestead." (Civ. Code, former §§ 1237, 1240, 1262, 1263, 1267, and 1268.) A judgment lien could not attach to real property upon which a homestead had been declared and homesteaded property was exempt from execution or forced sale. (Civ. Code, former § 1240; Code Civ. Proc., former § 674, subd. (a); *Jacobson* v. *Pope & Talbot* (1932) 214 Cal. 758, 760-761 [7 P.2d 1017].) Under this former statutory scheme, courts had held that the transfer of property upon which homestead had been declared was not a fraudulent conveyance because the property could not be reached to satisfy a judgment creditor. (*Montgomery* v. *Bullock* (1938) 11 Cal.2d 58, 62-63 [77 P.2d 846].) A fraudulent conveyance would occur, however, when the transferred property could have but had not yet been declared a homestead. (*La Point* v. *Blanchard* (1894) 101 Cal. 549, 552-553 [36 P. 98].)

In the mid-1970's the Legislature discarded much of "declared homestead" law and in its place enacted the current system of homestead exemptions. (1 Ogden's Revised Cal. Real Property Law (Supp.) pp. 66-69.) "Declared homesteads" were retained, as an alternative to automatic homestead exemptions, primarily "to continue the rule under former law that a judgment lien does not attach to a declared homestead." (Legis. committee com. to Code Civ. Proc., § 704.910, West's Ann. Codes, p. 363.)

Under current law, a judgment lien *can* attach to real property used as a dwelling, even though the property may later be found to be subject to a homestead *exemption*.[1] (Code Civ. Proc., § 667.340; legis. committee com. to Code Civ. Proc., § 697.340, West's Ann. Codes, p. 160.) In addition, a

---

[1]The amount of a homestead *exemption* is determined by the circumstances existing at the time the property is sold to satisfy the judgment. (Code Civ. Proc., § 704.730.)

dwelling subject to a homestead *exemption can* be sold to satisfy a money judgment so long as prescribed statutory procedures are followed. (Code Civ. Proc., § 704.740.) Because, under the current statutory scheme, judgment liens do attach to dwellings potentially subject to a homestead exemption and judgment creditors can obtain court-ordered sale of such dwellings to satisfy judgments, such property is not outside the reach of creditors. Consequently, a conveyance by a debtor of an interest in such property with the intent to defraud creditors is a fraudulent conveyance under Civil Code section 3439.04.

The cases relied upon by defendant dealt only with property that had been *declared* a homestead under the prior laws. Property upon which a homestead had been declared under the former statutory scheme was insulated from the attachment of judgment liens and could not be sold to satisfy a money judgment. Hence, a conveyance of such property did not defraud creditors. The same cannot be said for property potentially subject to a homestead exemption. A judgment lien can attach to this property and it can be sold to satisfy a money judgment. Hence, a transfer of such property with the intent to shield it from creditors is a fraudulent conveyance.

### B. *Actual Fraud Alone Establishes That a Conveyance Is Fraudulent*

"A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows: [¶] (a) With actual intent to hinder, delay, or defraud any creditor of the debtor. [¶] (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor: [¶] (1) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or [¶] (2) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due." (Civ. Code, § 3439.04.)

█ Defendant contends that Civil Code section 3439.04 requires proof of both actual fraud, as described in subdivision (a), and constructive fraud, as described in subdivision (b). She claims that proof of actual intent to defraud is insufficient to support the trial court's order setting aside the conveyance as fraudulent. This interpretation of the statute is unreasonable. The fact that subdivision (a) terminates with a period rather than a conjunction strongly indicates that the two subdivisions are alternative rather than conjunctive requirements. Furthermore, the statute from which section 3439.04, subdivision (a) was derived, former section 3439.07, required no

more than a showing that the debtor had the actual intent to defraud at the time of the conveyance. Section 3439.04 was enacted in 1986 as part of a statutory overhaul of the fraudulent conveyance statutes. Prior to 1986, former sections 3439.04, 3439.05, 3439.06 and 3439.07 each described a type of fraudulent conveyance. (Civ. Code, former §§ 3439.04-3439.07.) Former section 3439.04 was reenacted in substantially similar form as section 3439.05. (Civ. Code, § 3439.05.) Former sections 3439.05, 3439.06 and 3439.07 were combined to form section 3439.04. Former section 3439.05 became section 3439.04, subdivision (b)(1); former section 3439.06 became section 3439.04, subdivision (b)(2); former section 3439.07 became section 3439.04, subdivision (a). Because these three sections set forth, under former law, three independent types of fraudulent conveyances, the mere combination of the three in section 3439.04 did not destroy their independence. Section 3439.04 instead comprehensively sets forth three types of fraudulent conveyances which do not require proof of insolvency. Hence, section 3439.04, subdivision (a) is independent of section 3439.04, subdivision (b) and does not require proof of anything more than an actual intent to defraud.

### C. Sufficient Evidence of Fraudulent Intent

■ Defendant challenges the sufficiency of the evidence to establish actual fraudulent intent. ■ " '[O]ur power begins and ends with a determination as to whether there is *any* substantial evidence to support [the trial court's findings] . . . we have no power to judge of the effect or value of the evidence, to weigh the evidence, to consider the credibility of the witnesses, or to resolve conflicts in the evidence . . . .' " (*In re Stephen W.* (1990) 221 Cal.App.3d 629, 642 [271 Cal.Rptr. 319] quoting *Overton* v. *Vita-Food Corp.* (1949) 94 Cal.App.2d 367 [210 P.2d 757].) Our role is limited to determining whether there was evidence before the trial court to support its determination.

■ "If there is actual fraud a creditor can maintain an action to set aside the transfer without a showing that the defendant has no other assets to satisfy his judgment." (*Freeman* v. *LaMorte* (1957) 148 Cal.App.2d 670, 675 [307 P.2d 734]; accord *Fross* v. *Wotton* (1935) 3 Cal.2d 384, 388 [44 P.2d 350]; Civ. Code, § 3439.07, subd. (a)(1).) Actual intent to defraud must be shown by clear and convincing evidence. (*Hansford* v. *Lassar* (1975) 53 Cal.App.3d 364, 377 [125 Cal.Rptr. 804].)

The evidence before the trial court amply supported its implicit finding of actual fraud. Gilbert testified that he conveyed his interest in the Milpitas property to defendant to protect the property from his creditors. This testimony clearly and convincingly evidenced Gilbert's intent to prevent his

creditors from obtaining satisfaction of their claims from Gilbert's interest in the Milpitas property. This is actual fraud. Thus, the evidence was sufficient to support the finding of actual fraud underlying the trial court's judgment setting aside the conveyances.

## CONCLUSION

The judgment is affirmed.

Premo, J., and Elia, J., concurred.