Filed 4/26/13  Tunold v. Meints CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

|  |  |
|---|---|
| GILLIAN TUNOLD,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>DEBORAH A. MEINTS,<br><br>        Defendant and Respondent. | E055725<br><br>(Super.Ct.No. INC10004568)<br><br>**OPINION** |

APPEAL from the Superior Court of Riverside County.  Randall Donald White, Judge.  Affirmed in part and reversed in part.

Shadek Reese, Ltd., Susanna T. Kintz and John L. Shadek for Plaintiff and Appellant.

Roemer & Harnik, Mary E. Gilstrap and Helene P. Dreyer Koch for Defendant and Respondent.

On December 6, 2011, the trial court sustained the demurrer of defendant Deborah A. Meints to the fourth amended complaint of plaintiff Gillian Tunold.  The demurrer was sustained without leave to amend and the action was dismissed.  Tunold appeals.

1

# I

# STANDARD OF REVIEW

A demurrer is used to test the sufficiency of the factual allegations of the complaint to state a cause of action. (Code Civ. Proc., § 430.10, subd. (e).) The facts pled are assumed to be true and the only issue is whether they are legally sufficient to state a cause of action. "In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff. [Citation.]" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

Our standard of review is de novo: "Treating as true all material facts properly pleaded, we determine de novo whether the factual allegations of the complaint are adequate to state a cause of action under any legal theory, regardless of the title under

2

which the factual basis for relief is stated.  [Citation.]"  (*Burns v. Neiman Marcus Group, Inc.* (2009) 173 Cal.App.4th 479, 486.)

II

GENERAL ALLEGATIONS OF THE FOURTH AMENDED COMPLAINT

Tunold alleges that in March 2007, she was a divorced mother with sole parenting responsibility for three minor children.  Suffering from depression, she sought the services of Jerold Meints, a licensed marriage and family therapist in Palm Desert.

At the time, Jerold Meints was the husband of defendant Deborah Meints.  Deborah was also a licensed marriage and family therapist, and they both worked together under the name "Village Counseling."  They continue to work together under this name.  The Meints were also joint owners of a business known as "Sunshine Property Management."

From March 2007 through August 7, 2007, Jerold "preyed on [her] vulnerability" and otherwise manipulated Tunold into believing she was in love with him.

On August 7, 2007, Jerold ended Tunold's therapy sessions in order to begin a sexual relationship with her.  Jerold told Tunold he was going to leave his wife; he told her he loved her and asked her to marry him.  He also gave Tunold a diamond ring.

On September 6, 2007, Jerold convinced Tunold to loan him $500,000 in order to obtain a divorce and buy out Deborah's 50 percent interest in the Meints's home (called "Space Ranch") in Palm Desert.  Jerold promised Tunold that, "if their relationship did not work out," he would repay the money with interest.  Tunold then wrote a check for

3

$500,000, payable to Sunshine Property Management. Tunold alleges that Deborah was aware the money had been so deposited, and she was a signatory on the Sunshine Property Management bank account.

Between September 6 and September 14, 2007, Deborah became aware of the relationship between Tunold and Jerold. On September 14, 2007, the Meints deeded Space Ranch, which had little or no equity, to Jerold as his separate property.

On or before September 15, 2007, the Meints separated. They entered into a marital settlement agreement (MSA) on December 10, 2007, and were divorced in January 2008.

Tunold alleges that the MSA, an exhibit to the complaint, was a sham document designed to prevent her from recovering the $500,000 from Jerold.[1] In addition to dividing the real property, the MSA provided for an "equalizing payment" of $500,000 from Jerold to Deborah. With regard to community debts, the MSA allocated all identified community debts to Jerold. All other debts "known to both parties" were also assigned to Jerold. However, unknown debts were the joint and equal responsibility of both parties.

After the Meints separated on September 15, 2007, Tunold loaned Jerold an additional $140,000. Deborah personally received $500,000 on or before October 31, 2008.

_____

[1] The complaint states the sum as $550,000, but that appears to be a typographical error.

4

Jerold signed a confession of judgment acknowledging the loan from Tunold. The confession of judgment, which is attached to the complaint, was filed with the court on June 29, 2009. After attempts to collect the judgment from Jerold were unsuccessful, this action was filed against Deborah on September 3, 2010.

Although not mentioned in the complaint, the parties agree that Jerold filed a bankruptcy petition on November 5, 2010, and was discharged on April 1, 2011.

Shortly after Jerold's discharge in bankruptcy, he obtained an uncontested court order in his divorce action (referred to by the parties as "FOAH").[2] The order states: "The Court will exercise its continuing jurisdiction and carry out a post judgment division of assets and liabilities. The Court makes a net equal division of the unadjudicated community estate assets and debts by awarding Petitioner, Jerold R. Meints, the unadjudicated $500,000 asset received in the name of 'Sunshine Property Management' and also allocates to Petitioner, Jerold R. Meints, the corresponding unadjudicated $500,000 debt in the name of 'Sunshine Property Management.'" (Capitalization omitted.)

---

[2] By order filed August 24, 2012, we granted Deborah's motion to augment the record to include a request for judicial notice she submitted to the trial court in connection with her demurrer to the third amended complaint. The requested document is an order after hearing filed in the Meints's divorce action on April 25, 2011. Since there is no indication in our file that the trial court granted the request to take judicial notice of the document, we take judicial notice of it on our own motion. (Evid. Code, § 452.)

5

III

TUNOLD'S ALLEGED FIRST TO FOURTH CAUSES OF ACTION

A.  *Applicable General Principles*.

The first through fourth causes of action allege causes of action based on the Uniform Fraudulent Transfer Act (the UFTA), Civil Code section 3439 et seq.[3] "A fraudulent conveyance under the UFTA involves "'a transfer by the debtor of property to a third person undertaken with the intent to prevent a creditor from reaching that interest to satisfy its claim.'" [Citation.]" (*Filip v. Bucurenciu* (2005) 129 Cal.App.4th 825, 829.)

Our Supreme Court has held that "based on the policy considerations underlying the UFTA and the Family Code provisions governing dissolution judgments and settlements, . . . the UFTA applies to property transfers under MSA's." (*Mejia v. Reed* (2003) 31 Cal.4th 657, 669, fn. omitted.)

Thus, whether the debt was a debt due to operation of the community property law or otherwise, it is still subject to the UFTA. (Fam. Code, § 851.)

"The California Legislature has a general policy of protecting creditors from fraudulent transfers, including transfers between spouses. A transfer before dissolution can be set aside as a fraudulent conveyance. [Citations.] A transfer after dissolution can be set aside under the clear terms of the UFTA. When the court divides the marital property in the absence of an agreement by the parties, it must divide the property equally

_____

[3] Unless otherwise indicated, all further statutory references are to the Civil Code.

6

[citation], which provides some protection for a creditor of one spouse only. In view of this overall policy of protecting creditors, it is unlikely that the Legislature intended to grant married couples a one-time-only opportunity to defraud creditors by including the fraudulent transfer in an MSA." (*Mejia v. Reed, supra,* 31 Cal.4th at p. 668.)

It is therefore clear that the UFTA applies to transfers of joint and separate property in a property settlement agreement. (Fam. Code, §§ 850, 851, 852, subd. (b); *Filip v. Bucurenciu, supra,* 129 Cal.App.4th at p. 838.) Family Code section 851 specifically provides that: "A transmutation is subject to the laws governing fraudulent transfers." For example, since all property acquired by a married person during marriage is generally community property, a marital property agreement can change community property to separate property and a transmutation can change the ownership of specific property. (Fam. Code, §§ 760, 850.)

B.      *The Alleged Causes of Action.*

The first cause of action alleges that Jerold transferred the $500,000 that Tunold lent to Jerold to Deborah, that the transfer was in bad faith, and that Jerold was insolvent at the time of the transfer or was made insolvent by the transfer.

The first cause of action is based on section 3439.05. That section states: "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in

7

exchange for the transfer or obligation and the debtor was insolvent at that time or became insolvent as a result of the transfer or obligation."

The second and third causes of action are based on section 3439.04, subdivision (a)(1) (actual fraud) and (a)(2) (constructive fraud), respectively.

Section 3439.04, subdivision (a) states: "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows: [¶] (1) With the actual intent to hinder, delay, or defraud any creditor of the debtor. [¶] (2) Without receiving a reasonably equivalent value in exchange of the transfer or obligation . . . ." Section 3439.04, subdivision (b) lists factors to be used to determine actual intent under subdivision (a)(1).

C.     *The Demurrer and the Trial Court's Decision.*

Deborah's demurrer to the first three causes of action was based on the claim that Jerold received "reasonably equivalent value" in exchange for giving Deborah a $500,000 equalizing payment in the MSA. She also alleged that "it is impossible for a fraudulent transfer to have occurred from a transfer of assets between joint debtors."

Adopting this reasoning to all four causes of action, the trial court ruled that: "It appears from the pleadings that Jerold Meints received reasonably equivalent value in exchange for giving Deborah Meints a $500,000 equalizing payment. A fraudulent transfer cannot occur between alleged joint debtors."

8

D.    *The Trial Court Erred.*

As noted above, the first cause of action is based on section 3439.05.  That section requires a transfer without receiving a reasonably equivalent value in exchange when the debtor is insolvent, or is made insolvent by the transfer.  As discussed below, these are questions of fact which cannot be determined on demurrer.  On demurrer, the trial court was required to accept the allegation that Deborah did not transfer assets of reasonably equivalent value as a result of the transfer in the MSA.  Applying the provisions of the MSA to hold otherwise necessarily involves factual determinations.

The second cause of action is based on actual fraud under section 3439.04, subdivision (a)(1).  All that is needed is proof of an actual intent to defraud.  (*Reddy v. Gonzalez* (1992) 8 Cal.App.4th 118, 123.)  Intent is a factual issue:  "[A] transfer made by a debtor is fraudulent under the UFTA if the debtor made the transfer with the 'actual intent to hinder, delay, or defraud any creditor of the debtor.'  [Citation.]  Whether a conveyance was made with fraudulent intent is a question of fact, and proof often consists of inferences from the circumstances surrounding the transfer.  [Citation.]" (*Filip v. Bucurenciu, supra*, 129 Cal.App.4th at p. 834.)

The *Filip* court goes on to note that section 3439.04, subdivision (b) was enacted precisely to aid the trial court in making this factual determination.  (*Filip v. Bucurenciu, supra,* 129 Cal.App.4th at p. 834.)  The existence of such a factual issue defeats a demurrer under this subdivision.

9

A cause of action based on actual fraud under section 3439.04, subdivision (a)(1) is independent of the showing of constructive fraud required under section 3439.04, subdivision (a)(2). (*Reddy v. Gonzalez, supra*, 8 Cal.App.4th at p. 123.) Since a finding of actual fraud would not be based on the concept of "reasonably equivalent value," the trial court's decision under section 3439.04, subdivision (a)(2) does not provide any basis for finding that Tunold has not stated a cause of action under section 3439.04, subdivision (a)(1).

The third cause of action is based on section 3439.04, subdivision (a)(2). Under that subdivision, the question of whether there was a "reasonably equivalent value in exchange" under the MSA or otherwise is clearly a factual determination which cannot be resolved on demurrer.

In her reply brief, Tunold cites extensive authority to support her argument that (1) a bankruptcy trustee has the rights of a secured creditor under the applicable state fraudulent transfer law, including California's version of the UFTA (11 U.S.C.A. §§ 544(b), 548); (2) that under bankruptcy law, the question of whether a spouse received equivalent value in the property division is a material disputed fact (*In re Kemmer* (2001) 265 B.R. 224, 232); and (3) the factual determination involves a comparison of the actual value of the property transferred to the actual value of the property received (*In re Jordan* (2008) 392 B.R. 428, 441). For example, if real property is involved, the appraised value must be determined and the encumbrances subtracted in order to determine if equivalent

10

value was exchanged.  This fairly obvious proposition is codified in Civil Code section 3439.01, subdivision (a)(1).  (See also Evid. Code, § 813, subd. (a).)

We need not go into depth on the issue as our Supreme Court has clearly held that "[w]hether Husband here received equivalent value in the property division is a material disputed fact . . . ." (*Mejia v. Reed, supra*, 31 Cal.4th at p. 670.)  The court went on to note that the question of solvency or insolvency at the time of transfer under section 3439.02, subdivision (a) is another factual issue.  (*Mejia,* at p. 670.)  Tunold also argues persuasively that the defense of "reasonably equivalent value" under section 3439.08, subdivision (a) also requires a finding of good faith, and good faith is a third factual issue.

Since "reasonably equivalent value" is a factual issue, it obviously cannot be determined from the face of the MSA.  Nor does it "appear[] from the pleadings . . . ." as the trial court found.

Because of these factual issues, the trial court erred in sustaining the demurrer to the first, second, and third causes of action.

E.      *The Trial Court Also Erred in Its Alternative Ground of Decision on the First Four Causes of Action.*

The trial court also rested its decision on these three causes of action on the statement that:  "A fraudulent transfer cannot occur between alleged joint debtors."

11

In defense of the trial court's decision, Deborah cites *In re Jeffrey Bigelow Design Group, Inc.* (4th Cir. 1992) 956 F.2d 479,[4] a case relied on by Tunold.  The case states: "'The focus is on the consideration received by the debtor, not on the value given by the transferee. . . .'  [Citation.]  Hence, the proper focus is on the net effect of the transfers on the debtor's estate, the funds available to unsecured creditors.  As long as the unsecured creditors are no worse off because the debtor, and consequently the estate, has received an amount reasonably equivalent to what it paid, no fraudulent transfer has occurred." (*Id*. at p. 484.)

Deborah cites the case to argue that the creditor here, Tunold, was no worse off after the transfer because one of the joint debtors would still possess the assets and they would therefore still be available to the debtor.  The allegations of the complaint, taken as true, disprove Deborah's argument.  For example, if Family Code section 916 were found to be applicable, as Deborah has argued, the creditor would certainly be worse off after the interspousal transfer.

Application of the rule stated by the trial court would only raise more factual issues which cannot be decided on demurrer, including the basic issue of whether a creditor was worse off after the transfer.

We therefore conclude that the trial court erred in stating this alternative ground for sustaining the demurrer on the first four causes of action.

---

[4] Superseded by statute on other grounds as stated in *Englander v. Hekman Furniture* (2009) 63 Collier Bankr. Cas.2d (MB) 602.

F.	*The Fourth Cause of Action.*

The fourth cause of action is for conspiracy to make a fraudulent transfer.  The trial court did not discuss this cause of action separately.  The demurrer to the fourth cause of action should not have been sustained on this ground because it was based on the same erroneous factual and legal conclusions that were applied to the first three causes of action.

As discussed in connection with the fourth, sixth, and eighth causes of action, Tunold can recover on a conspiracy theory if an underlying tort violation of the UFTA is proven, even though it is not a separate cause of action.

Deborah discusses the conspiracy causes of action of the fourth, sixth, and eighth causes of action together, and we will do so also.

IV

TUNOLD'S FIFTH, SEVENTH, AND NINTH CAUSES OF ACTION

(FRAUD AND INTENTIONAL MISREPRESENTATION,

BREACH OF FIDUCIARY DUTY, AND NEGLIGENT MISREPRESENTATION)

A.	*The Alleged Causes of Action.*

The fifth cause of action is for fraud and intentional misrepresentation.  While it makes a number of allegations that Jerold committed fraud and made false representations to Tunold, it notably does not make any allegations againt Deborah, except that Jerold transferred Tunold's $500,000 to Deborah.

The seventh cause of action is for alleged breach of fiduciary duty. It asserts that Jerold owed a fiduciary duty to Tunold because he held a position of trust and confidence with her. The cause of action alleges that Jerold and Deborah "assigned the debt owed to [Tunold] to [Jerold], but distributed the proceeds of the debt to [Deborah] under the MSA in order to capitalize on Section 916 of California Family Code to prevent [Tunold] from recovering her money from [Jerold]." The only other allegation against Deborah is that she received the $500,000 and Tunold is entitled to recover it from her.

Similarly, the ninth cause of action alleges various misrepresentations by Jerold. The only allegation against Deborah is that Jerold transferred Tunold's $500,000 to her.

B.      *The Trial Court's Decision.*

The trial court sustained the demurrer to the fifth and ninth causes of action because it found that Tunold had failed to allege any wrongful conduct by Deborah. It sustained the demurrer to the seventh cause of action on the ground that Tunold had not alleged facts sufficient to show that Deborah owed Tunold a fiduciary duty.

C.      *Tunold's and Deborah's Arguments.*

On appeal, Tunold argues that the trial court erred. Tunold agrees that the three causes of action are directed against Jerold, but contends that, once Jerold's fraud, breach of fiduciary duty, and misrepresentations have been proven, the title to the money becomes voidable.[5] Under each cause of action, Tunold seeks to void the loan

_____

[5] Since the thrust of Tunold's argument is that Jerold defrauded her, it is not clear why Jerold is not a named defendant. Even after a discharge in bankruptcy, he could be pursued to establish the foundational facts leading to Tunold's desired conclusion that the

*[footnote continued on next page]*

14

transaction and recover the money due from Deborah, assuming that Deborah does not successfully assert a defense that she was a bona fide purchaser for value.

Deborah argues that, even if Jerold breached his fiduciary duties, the result would be that the loan transaction was voidable as to him. The same is true as to the fraud and misrepresentation causes of action. These predicate facts cannot be determined when Jerold is not a party to this action. Deborah therefore argues that the equitable remedy cannot be ordered in the absence of an indispensable party.

D.    *Discussion*.

We agree with Deborah and the trial court. These three causes of action confuse the factual issues (i.e., whether Jerold committed fraud and breached a fiduciary duty) with the equitable remedy (i.e., whether the loan transaction should be voided and the money recovered from Deborah).

The trial court properly sustained the demurrer to the fifth, seventh, and ninth causes of action.

---

*[footnote continued from previous page]*
title to the cash was voidable. If so, Tunold argues that Jerold's title should be voided and the money recovered from Deborah.

## V

## TUNOLD'S FOURTH, SIXTH, AND EIGHTH CAUSES OF ACTION

## (CONSPIRING, AIDING AND ABETTING FRAUD, AND

## INTENTIONAL MISREPRESENTATION)

A.    *Applicable General Principles*.

Both parties cite the seminal definition of conspiracy in *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 510 and 511.

Our Supreme Court held that "[c]onspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration.  [Citation.]  By participation in a civil conspiracy, a coconspirator effectively adopts as his or her own the torts of other coconspirators within the ambit of the conspiracy.  [Citation.]  In this way, a coconspirator incurs tort liability co-equal with the immediate tortfeasors."  (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd., supra,* 7 Cal.4th at pp. 510-511.)

Deborah cites *Kidron v. Movie Acquisition Corp.* (1995) 40 Cal.App.4th 1571.  The court described the fundamental principles of civil conspiracy law.  "To prove a claim for civil conspiracy, Kidron was required to provide substantial evidence of three elements:  (1) the formation and operation of the conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful conduct."  (*Id.* at p. 1581.)

"Accordingly, '[t]he basis of a civil conspiracy is the formation of a group of two or more persons who have agreed to a common plan or design to commit a tortious act.' [Citations.]  The conspiring defendants must also have actual knowledge that a tort is planned and concur in the tortious scheme with knowledge of its unlawful purpose. [Citations.]  [¶]  However, actual knowledge of the planned tort, without more, is insufficient to serve as the basis for a conspiracy claim.  Knowledge of the planned tort must be combined with intent to aid in its commission.  'The sine qua non of a conspiratorial agreement is the knowledge on the part of the alleged conspirators of its unlawful objective and their intent to aid in achieving that objective.'  [Citations.]" (*Kidron v. Movie Acquisition Corp., supra,* 40 Cal.App.4th at p. 1582.)

"A civil conspiracy is not an independent tort, but rather a means by which members of a conspiracy may be held responsible without direct participation in the wrongful act; and there is no tort unless a wrongful act has been committed and has caused damage.  [Citation.]"  (3 Witkin, Cal. Procedure (5th ed. 2008) Actions, § 557, p. 706.)

The Witkin treatise also describes the pleading of conspiracy:  "The labeling of an action as 'complaint for conspiracy to defraud' or conspiracy to commit some other tort is misleading.  Conspiracy (the agreement) is ordinarily not actionable by itself.  The cause of action arises out of some wrongful act committed by one or more of the conspirators, and if that wrongful act is set forth, the conspiracy averment is unnecessary to the statement of a cause of action.  [Citations.]  [¶]  The plaintiff may therefore state a cause

17

of action against several persons by simply alleging that the named defendants committed the acts. The theory of recovery may or may not be a conspiracy. [Citations.] As the court remarked in *McPhetridge v. Smith* (1929) 101 [Cal.App.] 122, 281 P. 419: 'That the word "conspiracy" was not used in nowise lessens the legal import of the acts nor if the word "conspiracy" had been used would it have added anything to the legal significance of what was done.' [Citation.]" (5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 921, pp. 335-336; see also 5 Witkin, Cal. Procedure, *supra*, Pleading, §§ 922, 923, pp. 336-338.)

B.    *The Alleged Causes of Action.*

As discussed above, the fourth cause of action is for conspiracy to make a fraudulent transfer under the UFTA.

The sixth cause of action alleges that Deborah had actual knowledge that Jerold had defrauded Tunold. It then states a number of ways in which Deborah assisted Jerold by participating in a scheme to defraud Tunold.

The eighth cause of action also alleges Deborah had actual knowledge of the loan and of Jerold's breach of fiduciary duties, and that she assisted Jerold and participated in his breach of fiduciary duties.

C.    *The Trial Court's Decision.*

As discussed under the UFTA allegations of the first four causes of action, the trial court erroneously found each of those causes of action insufficient because the transfers were for a reasonably equivalent value.

18

The trial court found, as to the sixth and eighth causes of action, that Tunold failed to sufficiently allege the underlying tort.

D.     *Our Decision.*

Since it is clear from *Applied Equipment Corp.* that a conspiracy allegation is not a separate cause of action, we are constrained to find that the demurrers to the fourth, sixth, and eighth causes of action must be sustained. (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd., supra*, 7 Cal.4th at pp. 510-511.)

E.     *The Fourth Cause of Action.*

Although the fourth cause of action cannot stand on its own, it is nevertheless clear that a claim that property that was fraudulently transferred under UFTA, if proven, would be the basis for a conspiracy claim against Deborah if it can be shown that she participated in the conspiracy.

"At issue in *Applied Equipment* was whether a contracting party could be held liable in tort for conspiracy to interfere with its own contract. The Supreme Court answered that question in the negative. [Citation.] The case before us, however, is not based in contract. Defendants fail to recognize that a claim under the UFTA in fact involves tortious conduct. In fraudulently transferring property, tortious conduct occurred." (*Filip v. Bucurenciu, supra*, 129 Cal.App.4th at p. 837.)

The trial court did not make a specific decision on the fourth cause of action, as discussed above, but it did decide that the other two conspiracy causes of action were insufficient because they failed to sufficiently allege the underlying tort.

19

Considering the question of sufficiency as to the fourth cause of action, we find that the conspiracy allegations are based on the fraudulent transfers alleged in the general allegations and the first two causes of action. Since the conspiracy allegations are based on the UFTA torts alleged in the first two causes of action, we regard the conspiracy allegations in the fourth cause of action as an adjunct to the UFTA violations alleged in the first three causes of action, and we find that they sufficiently define the tortious conduct necessary to support the conspiracy allegations.

F.     *The Sixth Cause of Action.*

Even though the conspiracy allegations of the sixth cause of action cannot state a cause of action, it is nevertheless clear that if the alleged underlying tort (fraud) was committed, Deborah is liable as a coconspirator if it can be shown at trial that she participated in a scheme to defraud Tunold of the $500,000, whether or not she personally committed the fraudulent acts.

Considering the issue of whether the factual allegations were insufficient to allege the underlying tort, we find that the sixth cause of action incorporates the preceding allegations of the complaint. When the incorporated sections are considered with the other factual allegations in the sixth cause of action, we find that there are sufficient factual allegations of fraud and intentional misrepresentation to state a cause of action.

G.     *The Eighth Cause of Action.*

In the eighth cause of action, Tunold alleges Deborah participated in Jerold's breach of fiduciary duty. In this regard, Deborah cites *Everest Investors 8 v. Whitehall*

20

*Real Estate Limited Partnership XI* (2002) 100 Cal.App.4th 1102. That case held that a nonfiduciary defendant cannot be liable for conspiring with a fiduciary duty defendant to breach the fiduciary's duty to plaintiff: "If the nonfiduciary is neither an employee nor agent of the fiduciary, it is not liable to the plaintiff on a conspiracy theory because a nonfiduciary is legally incapable of committing the tort underlying the claim of conspiracy (breach of fiduciary duty)." (*Id*. at p. 1104, fn. omitted.) Even if this cause of action could be interpreted to as a nonconspiracy cause of action, it is clear that this case would dispose of the eighth cause of action.

H.  *Conclusion*.

Since conspiracy is not an independent cause of action, we affirm the trial court's decision to sustain the demurrer to the fourth, sixth, and eighth causes of action.

We emphasize, however, that this decision does not prevent Tunold from introducing the requisite evidence at trial that Deborah conspired with Jerold to commit a tortious violation of the UFTA. If proven, Deborah may be liable on a conspiracy theory, regardless of whether she directly participated in the tortious act. "[W]here the complaint charges a conspiracy and the commission of a wrongful act, the only significance of the conspiracy charge is that each member may be held responsible as a joint tortfeasor, regardless of whether that member directly participated in the act. [Citations.]" (5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 45, pp. 111-112.)

Likewise, affirmance of the trial court's decision to affirm the demurrer to the sixth cause of action does not prevent Tunold from introducing evidence of Jerold's fraud

and misrepresentation at trial to show that Deborah conspired with Jerold in a conspiracy to defraud Tunold. Nor does it prevent Tunold from obtaining a judgment against Deborah on a conspiracy theory if the requisite proof is made to the satisfaction of the trial judge or jury.

VI

TUNOLD'S TENTH AND THIRTEENTH CAUSES OF ACTION

(UNJUST ENRICHMENT AND CONVERSION)

A.      *The Tenth Cause of Action.*

The tenth cause of action is for unjust enrichment. It alleges that, because of various alleged reasons, Deborah received the benefit of Tunold's $500,000 and has refused to return it to Tunold.

Tunold cites *Peterson v. Cellco Partnership* (2008) 164 Cal.App.4th 1583: "The elements of an unjust enrichment claim are the 'receipt of a benefit and [the] unjust retention of the benefit at the expense of another.' [Citation.] Here, plaintiffs received the benefit of the bargain. '[T]he "mere fact that a person benefits another is not of itself sufficient to require the other to make restitution therefor."' [Citation.] 'There is no equitable reason for invoking restitution when the plaintiff gets the exchange which he expected.' [Citation.]" (*Id*. at p. 1593, fn. omitted.) But, as shown in this case, the question of whether there is a benefit is a question of fact which cannot be determined on demurrer.

B.    *The Thirteenth Cause of Action.*

The thirteenth cause of action is for conversion.  It alleges that the $500,000 Jerold

transferred to Deborah was Tunold's money.  Further, "[Deborah] caused the $500,000 to

be paid to her and at the same time cause[d] the obligation to repay the Loan to be

assigned to [Jerold] under the MSA with the intent to defraud [Tunold]."  It is also

alleged that Deborah used the MSA in an attempt to insulate the $500,000 from

repayment by application of Family Code section 916.

Deborah argues that there could be no conversion because her retention of the

money is not wrongful.  She cites *Burlesci v. Petersen* (1998) 68 Cal.App.4th 1062:

"Conversion is the wrongful exercise of dominion over the property of another.  The

elements of a conversion claim are:  (1) the plaintiff's ownership or right to possession of

the property; (2) the defendant's conversion by a wrongful act or disposition of property

rights; and (3) damages.  Conversion is a strict liability tort.  The foundation of the action

rests neither in the knowledge nor the intent of the defendant.  Instead, the tort consists in

the breach of an absolute duty; the act of conversion itself is tortious.  Therefore,

questions of the defendant's good faith, lack of knowledge, and motive are ordinarily

immaterial.  [Citations.]"  (*Id*. at p. 1066.)

But *Burlesci* does not help Deborah.  The ultimate issue in the case is whether

Deborah's retention of the loan money is wrongful, i.e., whether she has a right to

possession of the $500,000.  Considering the incorporated allegations of the cause of

action, we find that sufficient facts are alleged to state a cause of action for conversion.

23

C.    *The Trial Court's Decision.*

In its ruling on the tenth and thirteenth causes of action, the trial court decided: "It *appears* from the pleadings that Deborah Meints received an equalizing payment from Jerold Meints in exchange for surrendering valuable rights and property interests." (Italics added.)

D.    *Conclusion.*

Appearances can be deceiving. As discussed in connection with the first and third causes of action, appearances are not a substitute for a factual determination of equivalent values. Because there are undetermined factual issues, the trial court erred in sustaining the demurrer to the tenth and thirteenth causes of action.

VII

TUNOLD'S ELEVENTH CAUSE OF ACTION

(BREACH OF CONTRACT)

The eleventh cause of action alleges that the loan agreement between Tunold and Jerold was a valid oral contract between them. It further alleges that the loan was a community debt under Family Code section 910, subdivision (a).[6]

The MSA provides: "Those debts, obligations, and liabilities known to both Parties and incurred prior to the Separation Date (and not otherwise specifically assigned to a Party under this Agreement), shall be paid by [Jerold]. Except as otherwise provided

---

[6] Although not alleged, the $500,000 check was payable to Sunshine Property Management, an entity owned by both Jerold and Deborah as community property before their divorce.

in this Agreement, any debt or claim against the Parties, unknown to one or both Parties and incurred prior to the Separation Date, shall be the joint and equal responsibility of the Parties. Unless specifically provided otherwise in this Agreement, debts, known or unknown, incurred after the Separation Date shall be paid by the Party incurring the debt."

Tunold argues that she alleged a valid contract between herself and Jerold. She also contends that Family Code section 916.2 does not apply to insulate Deborah from liability for this jointly incurred community debt.[7]

Deborah argues that she is not liable for debts contracted for by Jerold and assigned to her in the dissolution action. (Fam. Code, § 916, subd. (a)(2).)

The trial court decided: "[Deborah and Jerold's] request for Judicial Notice establishes that the Family Law Court in Meints v. Meints (INC 094565) assigned the $500,000 asset and debt to Jerold Meints. Pursuant to Family Code section 916[, subdivision] (a)(2), the non-contracting spouse, Deborah Meints, cannot be held liable for the debt."

The parties debate the effect of the trial court's decision and the applicability of Family Code section 916.2 under the MSA and the subsequent court decision modifying the MSA.[8]

---

[7] We note that the MSA provides: "The Parties acknowledge that they understand that any provisions of this Agreement requiring one Party to assume the obligation of the community or post-separation debts of the other Party may not be binding on creditors and that a creditor may have rights to seek payment against either Party."

[8] See text at footnote 2, *ante,* page 5.

However, we cannot apply the section to the facts here because the facts are undeveloped. There are factual issues as to whether the debt was known or unknown on the separation date under the MSA paragraph quoted above. There is also a factual question as to whether a substantially equal division of property was achieved by the April 20, 2012, order in the dissolution action. There are also factual questions underlying applicability of Family Code section 916.2.

We note, however, the statement in *CMRE Financial Services, Inc. v. Parton* (2010) 184 Cal.App.4th 263: "The only exception to application of [Family Code] section 916 our courts have recognized is where a creditor alleges a marital settlement agreement violates the separate provisions of the Uniform Fraudulent Transfer Act, Civil Code sections 3439 through 3439.12 (UFTA). [Citation.] Significantly, in reaching that conclusion the court noted that the legislative history of both [Family Code] section 916 and the UFTA shed no light on what the Legislature intended when a conflict between the two statutes arose. [Citation.] The court upheld application of the UFTA solely because it found the antifraud policies of the UFTA took precedence over the finality policies embodied in [Family Code] section 916. [Citation.]" (*Id.* at pp. 268-269.)

Due to the factual issues inherent in this cause of action, we find that the trial court erred in sustaining the demurrer to the eleventh cause of action.

TUNOLD'S TWELFTH CAUSE OF ACTION

(BREACH OF IMPLIED-IN-FACT CONTRACT)

The twelfth cause of action alleges an implied-in-fact contract between Tunold, Jerold, and Deborah.  The alleged cause of action is based on section 1621.

Section 1621 states:  "An implied contract is one, the existence and terms of which are manifested by conduct."

The cause of action alleges various facts which are alleged to show the existence of an implied-in-fact contract.  It also incorporated the earlier factual allegations of the complaint.

The trial court sustained the demurrer to this cause of action on the ground of uncertainty.

In response, Tunold cites *Khoury v. Maly's of California, Inc.* (1993) 14 Cal.App.4th 612:  "An oral contract may be pleaded generally as to its effect, because it is rarely possible to allege the exact words.  [Citation.]  A demurrer for uncertainty is strictly construed, even where a complaint is in some respects uncertain, because ambiguities can be clarified under modern discovery procedures.  [Citations.]"  (*Id*. at p. 616.)

Deborah cites *Wal-Noon Corp. v. Hill* (1975) 45 Cal.App.3d 605:  "There cannot be a valid, express contract and an implied contract, each embracing the same subject matter, existing at the same time.  [Citations.]  The reason for the rule is simply that

where the parties have freely, fairly and voluntarily bargained for certain benefits in exchange for undertaking certain obligations, it would be inequitable to imply a different liability and to withdraw from one party benefits for which he has bargained and to which he is entitled. The resolution of the instant controversy by the extension of equitable relief to plaintiffs would effectively deprive defendants of part of the bargained-for consideration in the lease, i.e., the right of control over repairs for which they are therein held responsible. '"While a court of equity may exercise broad powers in applying equitable remedies, it may not create new substantive rights under the guise of doing equity."' [Citations.]" (*Id*. at p. 613.)

We agree with both parties. When incorporated sections of the complaint are considered with the allegations in the twelfth cause of action, we find that sufficient facts were stated to overcome a demurrer for uncertainty.

However, we also agree that there cannot be an express contract and an implied contract at the same time concerning the same subject matter. We therefore affirm the trial court's sustaining of the demurrer to the twelfth cause of action on this ground.

IX

CONCLUSION

For the reasons stated above, we reverse the trial court's sustaining of Deborah's demurrer to the first, second, third, tenth, eleventh, and thirteenth causes of action. The trial court's sustaining of Deborah's demurrer to the remaining causes of action is affirmed.

28

Since Tunold does not raise any objections to the sustaining of the demurrers to the remaining causes of action without leave to amend, she has not met her burden of showing a reasonable possibility that the defects can be cured by amendment. (*Blank v. Kirwan, supra*, 39 Cal.3d at p. 318.)

X

DISPOSITION

The trial court's judgment and order of dismissal filed on December 6, 2011, which incorporates the trial court's tentative rulings on 13 alleged causes of action in plaintiff's fourth amended complaint is reversed as to the first, second, third, tenth, eleventh, and thirteenth causes of action. The trial court's rulings on all other causes of action are affirmed. Each party shall bear their own costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI_____
J.

We concur:

HOLLENHORST_____
       Acting P. J.

KING_____
       J.