Filed 5/30/18; Certified for Publication 6/27/18 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| DAVID LO et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>DANIEL S. LEE et al.,<br><br>    Defendants and Respondents. | A151603<br><br>(San Francisco County<br>Super. Ct. No. CPF-16-514927) |

Plaintiff David Lo, individually and as the assignee of plaintiffs Danny F.M. Lo and Alice M.C. Lo (collectively referred to as plaintiffs), appeals from an order of dismissal entered in favor of defendant Tristan You after the trial court sustained You's demurrer without leave to amend. Plaintiff contends the trial court should have overruled the demurrer because he stated a viable cause of action for fraudulent conveyance against You for college tuition payments made on You's behalf by his debtor father. On our de novo review, we conclude the demurrer was properly sustained. We thus affirm.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Commencing in December 2006, plaintiffs made several loans to defendant Daniel S. Lee, who is You's father.[1] Lee defaulted on the loans.

---

[1] "Because this matter comes to us on demurrer, we take the facts from plaintiff's complaint, the allegations of which are deemed true for the limited purpose of determining whether plaintiff has stated a viable cause of action." (*Stevenson v. Superior Court* (1997) 16 Cal.4th 880, 885.)

On July 15, 2013, an amended judgment was entered in favor of plaintiffs against Lee for $1,143,576. No part of the judgment debt has been paid.

On October 11, 2016, plaintiffs filed a first amended complaint (FAC) seeking to set aside allegedly fraudulent conveyances and seeking an accounting. The complaint was filed against Lee and You.

According to the FAC, between June 10, 2013, and November 18, 2013, Lee paid $104,850 to Northeastern University for You's tuition and other expenses. Lee made these payments knowing that he had incurred, or would thereafter incur, debts that would be beyond his ability to pay as they became due. He allegedly did so with the intent to "hinder, delay, or defraud" his creditors, including plaintiffs. In the FAC, plaintiffs sought general damages against Lee and You in the sum of $104,850, along with an accounting, plus attorney fees and costs.

On December 30, 2016, You filed a demurrer to the FAC. He contended Lee's transfers were not fraudulent because they did not lack consideration. He also argued that You was not a beneficiary of the transfer, having received only the intangible benefits of an education.

On January 17, 2017, plaintiffs filed their opposition to You's demurrer.

On February 1, 2017, the trial court filed its order sustaining You's demurrer to the FAC without leave to amend. Noting that there is no authority on whether creditors may attack college tuition payments as fraudulent transfers under the Uniform Voidable Transactions Act (Civ. Code,[2] § 3439 et seq.) (UVTA), the court adopted the reasoning of a Massachusetts bankruptcy case (*In re Palladino* (Bankr. E.D.Mass. 2016) 556 B.R. 10, 16), stating that " '[a] parent can reasonably assume that paying for a child to obtain an undergraduate degree will enhance the financial well-being of the child which will in turn confer an economic benefit on the parent.' "

_____

[2] All further statutory references are to the Civil Code except as otherwise indicated.

With that, the court dismissed with prejudice the action as to You. This appeal followed.

## DISCUSSION

### I. Standard of Review

The standard by which we review an order sustaining a demurrer without leave to amend is well established. We review the order de novo, exercising our independent judgment on whether the complaint states a cause of action as a matter of law. (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125.) In determining whether the complaint, liberally construed, states facts entitling the plaintiff to any relief, we assume the truth of all material properly pleaded facts, without affording any credit to contentions, deductions, or legal conclusions. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318; *Financial Corp. of America v. Wilburn* (1987) 189 Cal.App.3d 764, 768–769.) While the decision to sustain or overrule a demurrer is a legal ruling subject to de novo review, the granting of leave to amend involves an exercise of the trial court's discretion. (*Hernandez v. City of Pomona* (1996) 49 Cal.App.4th 1492, 1497.) We thus review the denial of leave to amend for abuse of discretion. (*Hayter Trucking, Inc. v. Shell Western E&P, Inc.* (1993) 18 Cal.App.4th 1, 13; *Everett v. State Farm General Ins. Co.* (2008) 162 Cal.App.4th 649, 655.)

### II. The UVTA

The UVTA, formerly known as the Uniform Fraudulent Transfer Act (see Stats. 2015, ch. 44, § 2, p. 1456 (Sen. Bill No. 161 (2015–2016 Reg. Sess.)), "permits defrauded creditors to reach property in the hands of a transferee." (*Mejia v. Reed* (2003) 31 Cal.4th 657, 663.) "A fraudulent conveyance is a transfer by the debtor of property to a third person undertaken with the intent to prevent a creditor from reaching that interest to satisfy its claim." (*Yaesu Electronics Corp. v. Tamura* (1994) 28 Cal.App.4th 8, 13.) The transferee "holds only an apparent title [to the transferred property], a mere cloak under which is hidden the hideous skeleton of deceit, the real owner being the scheming

3

and shifty judgment debtor . . . ." (*Cortez v. Vogt* (1997) 52 Cal.App.4th 917, 936.) The purpose of the voidable transactions statute is " 'to prevent debtors from placing property which legitimately should be available for the satisfaction of demands of creditors beyond their reach . . . .' " (*Chichester v. Mason* (1941) 43 Cal.App.2d 577, 584.)

A creditor seeking to set aside a transfer as fraudulent under section 3439.04 may satisfy either subdivision (a)(1) by showing actual intent, or subdivision (a)(2) by showing constructive fraud. (*Monastra v. Konica Business Machines, U.S.A., Inc.* (1996) 43 Cal.App.4th 1628, 1635 (*Monastra*); *Annod Corp. v. Hamilton & Samuels* (2002) 100 Cal.App.4th 1286, 1294; see *Reddy v. Gonzalez* (1992) 8 Cal.App.4th 118, 122–123.) Under the UVTA, "a transfer of assets made by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer, if the debtor made the transfer (1) with an actual intent to hinder, delay or defraud any creditor, or (2) *without receiving reasonably equivalent value in return,* and either (a) was engaged in or about to engage in a business or transaction for which the debtor's assets were unreasonably small, or (b) intended to, or reasonably believed, or reasonably should have believed, that he or she would incur debts beyond his or her ability to pay as they became due." (*Monastra*, at p. 1635, italics added, citing to § 3439.04.)

The UVTA allows a judgment to be entered against (1) the first transferee of the fraudulently transferred asset, (2) the transfer beneficiary, and (3) any subsequent transferee other than a good faith transferee. (§ 3439.08, subds. (b)(1) & (b)(2).) Section 3439.08, subdivision (b)(1) provides that "to the extent a transfer is voidable, 'the creditor *may* recover judgment' for the lesser of the value of the asset or the amount needed to satisfy the creditor's claim, and the 'judgment *may* be entered' *against the person for whose benefit the transfer was made*. [Citation.] Ordinarily, when a statute provides a court 'may' do something, the statute is permissive, not mandatory, and grants the court a discretionary authority. [Citations.] In exercising discretion to provide relief from fraudulent transfers, courts are directed by the [UVTA] to consider 'the principles

4

of law and equity,' which 'supplement its provisions.' [Citations.]  Hence, a court may refuse to enter a money judgment against a person for whose benefit a fraudulent transfer was made if an applicable legal or equitable principle bars entry of such a judgment." (*Renda v. Nevarez* (2014) 223 Cal.App.4th 1231, 1237, some italics added.)

### III.    *Tristan You Is Not a Transfer Beneficiary*

The trial court concluded that tuition payments made to a university by an insolvent debtor parent on behalf of his or her adult child are not voidable as fraudulent conveyances, reasoning that the parent receives an "economic benefit" in exchange for the tuition payments because an education helps secure the child's independent economic well-being.  In other words, because the parent receives a "reasonably equivalent value" in exchange for the transfer, constructive fraud cannot be shown.[3]  Thus, the court did not reach the issue of whether such payments may be recovered from the child as monetary damages under the UVTA.  Assuming for purposes of argument that such payments may be voidable, we conclude they may not be recovered from the debtor's child under the circumstances as alleged in the FAC.

Significantly, the FAC does not allege that You directly received any part of the funds that Lee transferred to Northeastern.  Instead, plaintiff admits he seeks recovery against You on the basis that You was "the beneficiary of [Lee's] largess."  As indicated above, under section 3439.08, subdivision (b)(1)(A), judgment for a fraudulent transfer may be entered against "[t]he first transferee of the asset *or the person for whose benefit the transfer was made*."  (Italics added.)

Our research has not disclosed any California cases defining "the person for whose benefit the transfer was made" within the meaning of this provision.  However, the legislative history is clear that section 3439.08, subdivision (b) "is derived from [11 U.S.C.S.] Section 550(a) of the Bankruptcy Code."  (Legis. Com. com. 2, 12A Pt. 2

---

[3] Plaintiff does not argue that Lee acted with actual intent to defraud his creditors.

West's Ann. Code (2016 ed.) foll. § 3439.08, p. 377.) Therefore, cases construing the Bankruptcy Code counterparts of the UVTA are persuasive authority due to the similarity of the laws in this area. (See *AFI Holding, Inc. v. Mackenzie* (9th Cir. 2008) 525 F.3d 700, 703 ["Where state statutes are similar to the Bankruptcy Code, cases analyzing the Bankruptcy Code provisions are persuasive authority."]; *In re United Energy Corp.* (9th Cir 1991) 944 F.2d 589, 594–595.) Under 11 U.S.C.S. section 550, subdivision (a)(1), a party may recover an avoidable transfer from "the initial transferee of such transfer or *the entity for whose benefit such transfer was made*." (Italics added.) The italicized language essentially mirrors section 3439.08, subdivision (b)(1)(A)'s reference to "*the person for whose benefit the transfer was made*." (Italics added.)

Federal courts have observed that "[t]he paradigm example of a transfer beneficiary is a guarantor. When the guaranteed debt is paid, the guarantor has not received the money, but it did receive a benefit—release from its guarantee." (*Official Comm. of Unsecured Creditors v. Fountainhead Grp., Inc. (In re Bridgeview Aerosol, LLC*) (Bankr. N.D.Ill 2015) 538 B.R. 477, 512.) Yet this model is not exclusive. (*In re Meredith* (4th. Cir. 2008) 527 F.3d 372, 375–376.) The court's obligation is to look behind the form of the transaction and which entity actually benefited from the transfer. (*Matter of Compton Corp.* (5th. Cir 1987) 831 F.2d 586, 595.)

Plaintiff contends that to find You is a transfer beneficiary, we "need look no further than the definition of the 'beneficiary' in a dictionary." He directs us to the following definition from the Merriam-Webster Online Dictionary: "a person or thing that receives help or an advantage from something: one that benefits from something [e.g.,] the main *beneficiaries* of these economic reforms" (https:www.merriam-webster.com/dictionary/beneficiary, as of May 30, 2018). However, as a tool of statutory analysis, this definition leaves several questions unanswered: Must the transferor intend to confer a benefit on the transferee? What type of benefit must be received? How directly must the benefit be related to the avoided transfer?

Contrary to plaintiff's suggestion, the fact that a person received any kind of "benefit," no matter how intangible or indirect, from a fraudulent transaction does not necessarily subject that person to liability. There are limits to the legal assessment of the type of "benefit" that will subject a beneficiary to liability for the debtor's alleged fraudulent transfer. The benefit received must be "direct, ascertainable and quantifiable" and must bear a " 'necessary correspondence to the value of the property transferred.' " (*In re Intern. Management Assoc.* (11th Cir. 2005) 399 F.3d 1288, 1293.) " '[T]ransfer beneficiary status depends on three aspects of the "benefit": (1) it must actually have been received by the beneficiary; (2) it must be quantifiable; and (3) it must be accessible to the beneficiary.' " (*In re Brooke Corp.* (Bankr. D. Kan. 2013) 488 B.R. 459, 468 (*In re Brooke*).) This three-part test is used in federal courts to determine whether a party should be subjected to liability as the ultimate beneficiary of an alleged fraudulent transfer. (*Baldi v. Lynch (In re McCook Metals, L.L.C.*) (Bankr. N.D.Ill 2005) 319 B.R. 570, 590–594 (*McCook Metals*)); see *Bonded Financial Services v. European Amer. Bank* (7th. Cir 1988) 838 F.2d 890, 896 (*Bonded Financial Services*)*; Sher v. SAF Fin. Inc.* (D.Md. 2011) 2011 U.S. Dist. Lexis 116967, *8.) The benefit that is actually received must flow from the initial transfer which is avoided, instead of being a secondary result of the alleged transfer. (*Bonded Financial Services*, at p. 896.) The nature of the legal benefit is predicated on the "disgorgement-based understanding of recovery of fraudulent transfers from those benefitting from the transfer. . . . [T]he benefit actually received must flow from the initial transfer which is avoided." (*In re Brooke*, at p. 469.) The three-part test must be satisfied for recovery of a transferred property under 11 U.S.C. section 550(a)(1) from the ultimate beneficiary. (*McCook Metals, LLC.*, at p. 590.)[4]

---

[4] Turning to the facts before it, the bankruptcy court in *McCook Metals* held that the debtor's transfer to another entity of the debtor's contractual right to acquire a smelter, in an attempt to protect this asset from the reach of its creditors, was a fraudulent

In addressing the first element, the *McCook Metals* court clarified that "an actual benefit rather than a merely intended one must be received in order for the beneficiary to be liable under [11 U.S.C.S. section 550(a)(1)]." (*McCook Metals*, *supra*, 319 Bankr. at p. 591.) The reason for this requirement is that "fraudulent transfer recovery is a form of disgorgement," which cannot be maintained against parties who do not actually benefit from the transfer. (*Ibid*.) But even if You's education qualifies as an "actual benefit," a point we do not decide, the two remaining requirements set forth in *McCook Metals* are not satisfied by the allegations in the FAC.

As to the second prong, courts have stated that in order for a benefit to be "quantifiable," "[a] merely theoretical benefit is not sufficient, since it would not be subject to disgorgement." (*McCook Metals*, *supra*, 319 Bankr. at p. 591.) Clearly, there is no way to quantify the intellectual and other benefits You received from the educational opportunity afforded him by Lee's transfer. Even plaintiff concedes "a creditor cannot levy on the student's college education." Any such benefits are entirely intangible and theoretical, and could never be disgorged by him as they cannot be valued solely in terms of dollars and cents.

Additionally, the benefit You received is not, and never was, "accessible" to him. Lee's funds were transmitted directly to Northeastern, and there are no allegations suggesting that the funds were ever controlled by You. In addressing this prong, the *McCook Metals* court noted that "[e]ven if a quantifiable benefit is actually received, it could not fairly be disgorged if the beneficiary never had access to it." (*McCook Metals, supra*, 319 B.R. at p. 592.) Here, You had no control over the funds that Lee transferred

transfer. As to recovery, it applied the foregoing three criteria and held that Lynch, a man who controlled both the debtor and the transferee, was liable as the entity for whose benefit the transfer was made. The court reasoned that Lynch received an actual benefit (his share of the value of the assets on the date of transfer); that the benefit was quantifiable (since testimony established a value of $11.1 million for the smelter); and that the value was accessible (through Lynch's control of the transferee). (*McCook Metals*, *supra*, 319 B.R. at pp. 591–592.)

8

to the school, and the FAC does not allege that he had access to these funds at any point in time.

We conclude plaintiffs have not adequately alleged a valid transferee beneficiary theory against You. Therefore, we need not decide whether the debtor, in the first instance, received a reasonably equivalent value for his tuition payments to Northeastern University, an issue we might have had to resolve if plaintiffs desired to recover the tuition paid by Lee directly from the college. (See, generally, *In re Adamo* (Bankr. E.D.N.Y. 2018) 582 B.R. 267, 273–274 & cases cited); *In re Palladino* (Bankr. E.D.Mass. 2016) 556 B.R. 10, 15–16; McKenzie, *The Tuition "Claw Back" Phenomenon: Reasonably Equivalent Value and Parental Tuition Payments* (2016) Colum. Bus. L.Rev., 924.)[5]

## DISPOSITION

The order is affirmed.

---

[5] Plaintiff asserts that "the measure of damages is not the value of the education [You] received but the value of the asset transferred. Mr. Lee transferred money, not an education." Plaintiff's assertion naturally raises the question why Northeastern University was not named as a defendant in the FAC, as the school was the entity that actually received Lee's money. When asked at oral argument why the school was not named as a defendant, appellate counsel replied the university was located outside California.

_____

Dondero, J.

We concur:

_____

Margulies, Acting P.J.


_____

Banke, J.

_A151603  Lo et al. v. Lee et al._

Filed 6/27/18

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| DAVID LO et al.,<br><br>        Plaintiffs and Appellants,<br><br>v.<br><br>DANIEL S. LEE et al.,<br><br>        Defendants and Respondents. | A151603<br><br>(San Francisco County<br>Super. Ct. No. CPF-16-514927)<br><br>ORDER CERTIFYING OPINION<br>FOR PUBLICATION<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

The opinion in the above-entitled matter, filed on May 30, 2018, was not certified for publication in the Official Reports. After the court's review of a request under California Rules of Court, rule 8.1120, and good cause established under California Rules of Court, rule 8.1105, it is hereby ordered that the opinion should be published in the Official Reports.


Dated: _____        _____
                                                                   Dondero, J.

Trial Court:   San Francisco County Superior Court

Trial Judge:   Hon. A. James Robertson II

Counsel:

Law Office of Lawrence D. Miller, Lawrence D. Miller for Plaintiff and Appellant David Lo.

Law Offices of Raymond M. Alexander, Jr., Raymond M. Alexander, Jr., for Defendant and Respondent Tristan You.

*A151603  Lo et al. v. Lee et al.*