[No. B071550. Second Dist., Div. Four. Sept. 8, 1994.]

YAESU ELECTRONICS CORPORATION et al., Plaintiffs and Respondents, v.
YUKIO TAMURA, Defendant and Appellant.

COUNSEL

Peter C. Ver Halen for Defendant and Appellant.

Schramm & Raddue, Richard F. Lee and Judith E. Koper for Plaintiffs and Respondents.

## OPINION

**VOGEL (C. S.), J.—**

### INTRODUCTION

This appeal contests that portion of a judgment which set aside as a fraudulent conveyance Yukio Tamura's gift of $243,206 to his sons made one month after a jury had returned a verdict compelling him to pay in excess of $2 million. Because the funds were derived from a defined benefit pension plan, Yukio Tamura maintained that the moneys were entitled to the statutory exemption from execution accorded private retirement plans by section 704.115 of the Code of Civil Procedure. After taking evidence, the trial court, relying upon *In re Bloom* (9th Cir. 1988) 839 F.2d 1376, found the exemption inapplicable because the plan had not been designed and used for retirement purposes. We find substantial evidence supports that determination and therefore affirm the trial court's decision.

### FACTUAL AND PROCEDURAL BACKGROUND

*The First Litigation and Tamura's Transfer and Liquidation of Assets*

In 1985, litigation commenced between Yukio Tamura (Tamura) and Yaesu Electronics Corporation, Yaesu Musen U.S.A., Inc., and Soka Enterprises, N.V. (collectively Yaesu). The litigation was based upon disputes arising out of a long-term business relationship between the parties.

In April and May of 1989, a bench trial on various equitable claims was conducted which resulted in findings in favor of Yaesu.

In August and September of 1989, a jury trial was held on the remaining claims.

On September 26, 1989, the jury found in favor of Yaesu on its fraud and breach of fiduciary duty claims against Tamura and returned a verdict of approximately $2.2 million.

The next day (September 27), Tamura withdrew $100,000 from a checking account.

On September 29, the jury awarded Yaesu $100,000 punitive damages after Tamura had stipulated that his net worth was between $1.1 and $1.2 million.

On October 1, Tamura memorialized a $90,000 loan to his brother, secured by a trust deed on real property located in California.

On October 5, Tamura sold $94,504 of shares in a Franklin Mutual Fund.

On October 16, Tamura borrowed $10,000 from his adult son Alvin Tamura, secured by a lien on his car.

On October 26, Tamura engaged in the transaction which is the subject of this appeal. He liquidated his shares in his Nuveen Tax Exempt Unit Trust Account (Nuveen Account) for $243,206 and gave the money, in equal shares, to his adult sons Alvin and Stanley Tamura. The funds in the Nuveen Account were derived from a defined benefit pension plan (the YMT Plan) created in 1979 for Tamura. Because of changes in the tax laws, Tamura had liquidated the YMT Plan in 1986 and received a lump-sum distribution of $380,000. With those proceeds, Tamura purchased his Nuveen shares as well as shares in the Franklin fund.[1] (Tamura was 65 years old in 1986.)

On November 28, the trial court formally entered judgment in favor of Yaesu and against Tamura.

In the following four months, Tamura conveyed stock to his niece, liquidated another $46,962 in Franklin Mutual Fund shares, and entered into

[1] As explained, Tamura also liquidated his Franklin Mutual Fund shares for approximately $141,000 after the jury returned its verdict against him. However, because Yaesu was unable to trace that liquidation to a particular asset or person, it did not pursue a claim for that sum in its fraudulent conveyance action.

a marital settlement agreement with his ex-wife by which he purported to transfer to her all of his remaining interest in real property.

*Yaesu's Action to Contest Tamura's Fraudulent Conveyances*

Although Tamura appealed from the $2.3 million judgment entered against him, he did not post an appeal bond.[2] Yaesu's efforts to enforce the judgment yielded less than $7,000. Accordingly, in December 1990, a year after judgment had been entered against Tamura, Yaesu filed an action to set aside Tamura's transfers of assets. The claim raised on this appeal relates only to the trial court's finding about Tamura's retirement account (the YMT Plan). The evidence on that point includes the following.

In January 1992, Yaesu conducted a debtor's examination of Tamura. In regard to the YMT Plan, Tamura testified that he had established it "because the law stated that you can have your own defined benefit plan for tax purposes." When asked what he intended to do with the proceeds, he replied: "Well, I expect to save a certain amount of it and leave it for my kids, their schooling, or whatever." He explained that when he had purchased the Nuveen shares with the proceeds received from the distribution of the YMT Plan, his purpose was not to use the money for his retirement but to "eventually to pass it on to the kids." Lastly, he testified that as of the date of the debtor's examination, he did not have any retirement accounts and that he "never" had a retirement account.

At the March 1992 trial on Yaesu's action to set aside the transfer as fraudulent, Tamura's attorney, Garrett Suemori, testified that the YMT Plan had been formed in compliance with the pertinent Internal Revenue Service (IRS) requirements. Tamura, however, gave conflicting testimony about his intent in setting up the plan. On the one hand, he testified that he had created the plan for "[his] benefit after retirement or whatever" and that he had used the dividends from the Nuveen account for living expenses. However, on cross-examination, he conceded that he had created the retirement account to "set[] aside money for the kids."

The trial court issued the following ruling: "(1) The testimony of Suemori establishes that the defined benefit pension plan established by Suemori for Yukio Tamura complied with all requirements for tax deferral pursuant to IRS requirements. The court finds no defect in the services provided by Mr. Suemori. [¶] (2) The court does find, however, by a preponderance of the evidence that the dominant purpose for the establishment of the defined

---

[2]In April 1993, Division One of this court filed a nonpublished opinion affirming the judgment in its entirety. (*Tamura v. Yaesu Electronics Corp.* (Apr. 21, 1993) B048353.)

benefit pension plan was not to provide for Yukio's retirement, but rather to defer taxes, to consequently enhance accumulation of savings, and to accumulate funds for a gift to Yukio's sons. There were numerous references in the deposition and judgment debtor's exam transcripts to this effect. This evidence was corroborated by the fact that Yukio never did utilize the funds accumulated for retirement, but rather spent a portion and gave the balance to his sons. The law, as interpreted in [In] re Bloom, is intended to protect retirement funds from execution so as not to deprive the retiree of pension income, leaving the retiree destitute. This purpose is served here since the funds were not intended for, not used for, retirement purposes. The court therefore finds that the funds in question are available for execution by Yaesu."

This appeal by Tamura followed.[3]

## DISCUSSION

■ A fraudulent conveyance is a transfer by the debtor of property to a third person undertaken with the intent to prevent a creditor from reaching that interest to satisfy its claim. However, a conveyance will not be considered fraudulent if the debtor merely transfers property which is otherwise exempt from liability for debts. That is, because the theory of the law is that it is fraudulent for a judgment debtor to divest himself of assets against which the creditor could execute, if execution by the creditor would be barred while the property is in the possession of the debtor, then the debtor's conveyance of that exempt property to a third person is not fraudulent. (See generally, Civ. Code, §§ 3439-3449 [Uniform Fraudulent Transfer Act].)

One statutory exemption of property otherwise available for enforcement of a money judgment is found in Code of Civil Procedure section 704.115. That section exempts: "[a]ll amounts held, controlled, or in the process of distribution by a private retirement plan, for the payment of benefits as an annuity, pension, retirement allowance, disability payment, or death benefit . . . ." ■ The purpose of this exemption is to safeguard a source of income for retirees at the expense of creditors. (See In re Crosby (Bankr.C.D.Cal. 1993) 162 Bankr. 276, 283.) However, neither the debtor's mere compliance with the pertinent IRS rules in creating the private retirement plan nor the debtor's designation of the asset as a private retirement plan translates to an automatic exemption from execution. In analyzing Code

---

[3]Pursuant to the parties' agreement, the money has been placed in a jointly controlled bank account pending the outcome of this appeal.

of Civil Procedure section 704.115, in the context of a bankruptcy proceeding,[4] the Ninth Circuit Court of Appeals recently held: "Without regard to its label, a plan not used and designed for retirement purposes is not a retirement plan" entitled to the benefit of the statutory exemption. (*In re Bloom, supra,* 839 F.2d 1376, 1378.) In making that analysis, the appellate court "emphasize[d] that [it was] not creating a uniform test or a comprehensive list of relevant factors. All factors are relevant; but no one is dispositive. Rather, all of them must be considered in the light of the fundamental inquiry—whether the plan was designed and used for a retirement purpose." (*Id.* at pp. 1379-1380.)

■   Given this legal framework, the dispositive inquiry for the trial court in this case was whether Tamura had designed and used the YMT Plan for retirement purposes. If so, the proceeds from the distribution of the plan would retain their exempt status even though used to purchase the shares in the Nuveen Account (Code Civ. Proc., § 703.080, subd. (a)) and Yaesu would not be able to set aside Tamura's transfer of the moneys to his two sons. If, on the other hand, Tamura had not designed and used the plan for retirement purposes, then its proceeds were not exempt from execution so that Tamura's transfer to his sons was a fraudulent attempt to deprive Yaesu of an asset against which it could enforce its judgment. Conflicting evidence was offered on the issue of Tamura's purpose in creating and funding the YMT Plan. The trial court resolved the matter in favor of Yaesu. As we shall now explain, that finding is supported by substantial evidence and therefore insulated from attack on appeal.

In his testimony at the debtor's examination, Tamura admitted that he had never had a retirement account. He conceded that his purpose in establishing the YMT Plan was not to save money to use in his retirement but to take advantage of the tax laws and to save money for his children. Other than his uncorroborated testimony that he used the dividends from the Nuveen Account for living expenses, there was no evidence that Tamura, who had retired and not worked since 1985, used the money from the plan for his retirement.

Additional circumstantial evidence that the YMT Plan was not truly a retirement plan can be gleaned by examining the time period in which Tamura made the gifts to his sons. It was one month after the return of the jury's verdicts awarding Yaesu $2.3 million. Although in the course of that trial Tamura had stipulated his worth exceeded $1 million, he immediately

---

[4]The issue arose in a bankruptcy proceeding because the Bankruptcy Act permits an individual debtor to exclude from the bankruptcy estate property exempted by applicable state law. (*In re Cheng* (9th Cir. 1991) 943 F.2d 1114, 1115.)

began to borrow money from his relatives (including his son Alvin Tamura) and to encumber his remaining assets. At the same time, Tamura liquidated the Nuveen Account holding the YMT Plan proceeds and made unconditional transfers of the cash to his two sons. This chronology strongly suggests that Tamura did not consider the proceeds of the YMT Plan a source of retirement income but instead viewed the money as one of his many assets which would be subject to execution by Yaesu and which he therefore intended to conceal from Yaesu.

In sum, substantial evidence supports the trial court's determination that the YMT Plan was not designed and used for a retirement purpose. As the proceeds of the plan were therefore not exempt from execution, Tamura's transfer to his sons was a fraudulent conveyance which the court properly set aside.

DISPOSITION

That portion of the judgment appealed from is affirmed.

Woods (A. M.), P. J., and Epstein, J., concurred.