Filed 8/23/23  Capitol Indemnity Corp. v. Topolewski CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| CAPITOL INDEMNITY CORPORATION,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>GARY G. TOPOLEWSKI, et al.,<br><br>Defendants and Appellants. | B320636<br><br>(Los Angeles County<br>Super. Ct. No. 19CHCV00314) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Melvin D. Sandvig, Judge.  Affirmed in part and reversed in part.

Blut Law Group and Elliot S. Blut for Defendant and Appellant Gary G. Topolewski.

Law Office of Howard Goodman and Howard Goodman for Plaintiff and Respondent.

Respondent Capitol Indemnity Corporation (Capitol) obtained a judgment against appellant Gary Topolewski in 2008 in an unrelated matter. In 2018, Topolewski filed an acknowledgment of satisfaction of judgment, falsely stating that the judgment had been satisfied in full. A few months later, Topolewski obtained a grant deed in his name to a parcel of real property. He paid for the property with money provided by Northern Resources, Inc. (Northern). Two months after that, Topolewski transferred the property by quitclaim deed to Northern.

Capitol brought an action against Topolewski and Northern, alleging claims for fraudulent conveyance and conspiracy. Capitol alleged that absent the fraudulent satisfaction of judgment, it would have obtained a lien on the property for the amount of its judgment during the time Topolewski held it in his name. Instead, Capitol alleged that Topolewski and Northern conspired to avoid the lien by filing the satisfaction of judgment and then transferring the property to Northern. Capitol sought to set aside the property transfer and impose the lien. Capitol also sought punitive damages.

Following a bench trial, the court entered judgment in favor of Northern, finding that it was a bona fide purchaser of the property. As such, the court declined to set aside the transfer of the property to Northern. As to Topolewski, the court entered judgment against him and in favor of Capitol, finding that Topolewski had filed and recorded the fraudulent satisfaction of judgment in order to avoid Capitol's lien on the property. The court awarded Capitol the amount of its prior judgment, plus interest, as well as punitive damages against Topolewski.

Topolewski appeals.  He argues that the court erred in finding for Capitol on its fraudulent conveyance claim, contending that the property never belonged to him and therefore Capitol never had a right to a lien on it.  He argues that Capitol did not prove any damages on the same basis.  We find no error as to these claims. However, we agree with Topolewski that Capitol failed to present sufficient evidence of his financial condition to support the award of punitive damages. We therefore reverse the award of punitive damages and otherwise affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY

### I.    *The Complaint*

Capitol filed a complaint against Topolewski and Northern in April 2019, alleging claims for fraudulent transfer and conspiracy.  Capitol alleged that Northern was a corporation doing business in Nevada and that Topolewski was a "shareholder, officer, and/or director" of Northern.

Capitol alleged that in 2008, it obtained entry of judgment in Los Angeles Superior Court based on a Nevada judgment entered against Topolewski (the underlying matter).[1]  Capitol renewed the judgment in 2017 in the amount of $71,067.60 and recorded an abstract of judgment with the Los Angeles County Recorder in January 2018.  Capitol attached copies of these documents to the complaint.

The complaint further alleged that on May 2, 2018, Topolewski filed a false acknowledgment of satisfaction of judgment (the satisfaction of judgment) in the underlying matter,

---

[1]     The judgment was entered against Gary and Mark Topolewski. Mark Topolewski is not a party to this appeal.

3

stating that the judgment had been satisfied in full.[2] Capitol attached a copy of the satisfaction of judgment to its complaint. The cover page states that Topolewski requested the recording of the satisfaction of judgment. The satisfaction of judgment lists Capitol as the filing party, with an address on Lurline Avenue in Chatsworth, California. The document bears an illegible signature. The following page is a notary's certificate, stating that the document was signed by Angelo Mastantuono, an individual.[3]

As detailed in the copies attached to the complaint, in July 2018, Topolewski acquired by grant deed a parcel of real property on Tuba Street in Northridge, California (the Tuba Street property). That grant deed was recorded in August 2018. On September 26, 2018, Topolewski executed a quitclaim deed conveying title to the Tuba Street property to Northern for no consideration. The quitclaim deed was recorded on October 5, 2018.

Capitol also alleged that in February 2019, the court in the underlying matter granted Capitol's motion to vacate the satisfaction of judgment. As such, Capitol remained a creditor of Topolewski.

In the first cause of action to set aside the fraudulent transfer, Capitol alleged that the satisfaction of judgment was "false and fraudulent" and that Topolewski and Northern

---

[2] Topolewski claimed below that he did not file or cause to be filed the false satisfaction of judgment. However, he does not challenge on appeal the trial court's finding to the contrary. It is undisputed that the judgment has not actually been satisfied.

[3] Topolewski testified at trial that he knew Mastantuono, but denied that Mastantuono was employed by Topolewski's company, Metal Jeans, Inc.

4

prepared, executed, and recorded the fraudulent satisfaction of judgment "to prevent the attaching of a judgment lien" to the Tuba Street property. The complaint further alleged that Topolewski's transfer of his interest in the Tuba Street property to Northern and the preparation and recording of the fraudulent acknowledgment of satisfaction of judgment were "made with an actual intent to hinder, delay, and defraud all of the current and future creditors" of Topolewski, including Capitol, in violation of the Uniform Fraudulent Transfer Act, Civil Code section 3439.04.[4] Capitol further sought $50,000 in punitive damages, alleging that Topolewski and Northern acted "intentionally, willfully, fraudulently, and maliciously" to defraud Topolewksi's creditors and to deprive those creditors "of a real property which could be liened [*sic*] or levied to satisfy [Capitol's] judgment."

In the second cause of action for conspiracy, Capitol alleged that Topolewski and Northern conspired to hinder Capitol's collection of its judgment through the recording of the satisfaction of judgment and the transfer of the Tuba Street property. Capitol alleged that it had been damaged in the amount of its unsatisfied judgment, along with accrued interest.

The complaint sought to have the transfer set aside and declared fraudulent and void to the extent necessary to satisfy Capitol's judgment, a temporary restraining order prohibiting Topolewski and Northern from transferring or disposing of the

---

[4] The Uniform Voidable Transactions Act (UVTA), formerly known as the Uniform Fraudulent Transfer Act (see Stats. 2015, ch. 44, § 2, p. 1456 (Sen. Bill No. 161 (2015–2016 Reg. Sess).)), "permits defrauded creditors to reach property in the hands of a transferee." (*Mejia v. Reed* (2003) 31 Cal.4th 657, 663 (*Mejia*).) All further statutory references are to the Civil Code unless otherwise indicated.

5

Tuba Street property, imposition of a lien on the Tuba Street property, and exemplary and punitive damages of $50,000.

## II. *Court Trial*

The matter proceeded to a court trial on February 7, 2022. The parties stipulated to the admission of the exhibits, including the documents detailed in Section I *post*. In addition, the following witnesses testified.

Pat Framke works as a senior claims specialist for Capitol. She testified that Capitol had not received any payment in satisfaction of the judgment. She also testified that the satisfaction of judgment was not authorized by Capitol, was not filed by Capitol's attorney, and the Chatsworth address listed for Capitol on the form was not an address ever used by Capitol.

Topolewski testified that he was entitled to satisfaction of judgment because he felt the judgment was fraudulent. He denied preparing or filing the acknowledgement of satisfaction of judgment. He acknowledged that the Chatworth address listed for Capitol on the satisfaction of judgment was an address for his company, Metal Jeans, Inc.

Topolewski also testified that he had been doing business with Northern for 20 years. At the time he purchased the property in July 2018, Topolewski testified that he was not an officer, shareholder, employee, or director of Northern. The parties stipulated that Northern retained Topolewski as its agent to search for and acquire the Tuba Street property. Topolewski testified that he found the Tuba Street property and showed it to Northern. He received a wire transfer of $880,000 from Northern on July 30, 2018. He paid $875,000 for the purchase of the property and kept the remaining $5,000 as a finder's fee.

6

Topolewski testified that he acquired title to the Tuba Street property in his own name. When asked why he did not acquire the deed directly for Northern, he stated that he was not a Northern employee, so "I just did it personally." He stated that he did not know whether, in the absence of the recorded satisfaction of judgment, a judgment lien in favor of Capitol would have attached to the Tuba Street property when he recorded the grant deed. According to Topolewksi, he understood that "it was always Northern's property," and he just signed it over to them.

Topolewski never told Northern about the satisfaction of judgment. At the time in 2018, he was not insolvent and had assets greater than the amount of the judgment.

Topolewski also testified relevant to the punitive damages claim. He had earned approximately $100,000 from sales of a book he had written. He is sole owner of Metal Jeans, Inc., which had been operating for about 30 years selling jeans. He earned approximately $25,000,000 in 2020 and 2021 from sales of products from Metal Jeans. Metal Jeans currently had "a couple million dollars" in its bank account.

III. *Decision*

Topolewski and Northern moved for a directed verdict at the close of Capitol's case. The court granted the motion for Northern but denied it for Topolewski. At the conclusion of all testimony, counsel for Capitol requested punitive damages of $500,000.

The court indicated it was finding for Capitol on the first cause of action, which alleged that recording of the satisfaction of judgment was a fraudulent conveyance pursuant to section 3439.04. Regarding punitive damages, Topolewski's counsel

7

argued that Capitol did not suffer any damages as a result of the filing of the satisfaction of judgment, given the court's finding that the transfer to Northern was not fraudulent and that Capitol never had the right to a lien against the Tuba Street property. Capitol's counsel argued that absent the fraudulent recording of the satisfaction of judgment, "Capitol would have had a judgment lien against the property and would have recovered its judgment."

The court found that the satisfaction of judgment was fraudulently entered and would be set aside. The court also awarded $100,000 in punitive damages and ordered Capitol to prepare a judgment.

On February 7, 2022, Topolewski filed a "second amended request for statement of decision," seeking a statement of decision on eight issues.[5]

Capitol filed and served a proposed judgment on February 10, 2022. On February 14, 2022, Topolewski submitted objections to the proposed judgment. He objected that the court had not issued a statement of decision pursuant to Code of Civil Procedure, section 632 as he requested. He also objected that the judgment purported to supersede the 2017 judgment in the underlying matter, which was "not stated by the Court nor briefed, nor is there any authority for superseding the prior judgment."

In a minute order on February 23, 2022, the court stated that it had reviewed the proposed judgment and Topolewski's opposition, and ordered Capitol to prepare and serve a proposed statement of decision within 10 days. Capitol filed a proposed statement of decision on February 28, 2022. Topolewski filed an

---

[5] There is no earlier request in the record.

8

objection on March 4, 2022, on the basis that the proposed statement of decision "does not provide a statement as to the categories identified" in his request for a statement of decision.[6]

The court signed the proposed judgment, entering it as the judgment on February 23, 2022. In the judgment, the court found that Northern "was a bona fide purchaser for value when it acquired title to [the Tuba Street property] by quitclaim deed recorded on October 5, 2018."

Accordingly, the court declined to order attachment of a judgment lien in favor of Capitol against the Tuba Street property. The court further found that Topolewski was not acting as Northern's agent and Northern was therefore not liable for fraudulent acts committed by Topolewski.

With respect to Topolewski, the court found that he "orchestrated the preparation, execution, filing and recording of a fraudulent acknowledgment of satisfaction of judgment for the purpose of avoiding a judgment lien in [the underlying matter] from attaching to his title to [the Tuba Street property] when a grant deed in his favor was recorded on August 20, 2018." The court further found that Capitol "suffered substantial harm from the fraudulent recording of the acknowledgment of satisfaction of judgment orchestrated by Gary G. Topolewski which prevented the attachment of a judgment lien on August 20, 2018." The court found that the current balance owed on the judgment was $71,067.60, plus interest, for a total of $102,044.37.

Turning to punitive damages, the court found that Topolewski's conduct in preparing, filing, and recording the fraudulent satisfaction of judgment "constituted fraud,

---

[6] There is no indication in the record that the court signed or issued a statement of decision.

9

oppression and malice and that punitive and exemplary damages should be awarded" against Topolewski in the amount of $100,000.  Based on evidence regarding Topolewski's earnings and assets, the court found that Topolewski "possessed substantial wealth from his 100% interest in Metal Jean[s], Inc. and from sales of a published book."

The court accordingly entered judgment for Northern, against Capitol, with costs.  The court also entered judgment for Capitol, against Topolewski, for the current amount of the judgment, $102,044.37, plus $100,000 in punitive damages.  The court ordered that the judgment "shall supersede the judgment entered" in the underlying matter.

Topolewski timely appealed from the judgment.

## DISCUSSION

### I.    *Standard of Review*

In reviewing a judgment following a bench trial, "'we review questions of law de novo.  [Citation.]  We apply a substantial evidence standard of review to the trial court's findings of fact. [Citation.]  Under this deferential standard of review, findings of fact are liberally construed to support the judgment and we consider the evidence in the light most favorable to the prevailing party, drawing all reasonable inferences in support of the findings.'" (*Lopez v. La Casa De Las Madres* (2023) 89 Cal.App.5th 365, 378, quoting *Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981 (*Thompson*).)

A single witness's testimony may constitute substantial evidence to support a finding.  (*Thompson, supra*, 6 Cal.App.5th at p. 981, citing *Citizens Business Bank v. Gevorgian* (2013) 218 Cal.App.4th 602, 613.)  It is not our role as a reviewing court to reweigh the evidence or to assess witness credibility.  (*Niko v.*

10

*Foreman* (2006) 144 Cal.App.4th 344, 364.) "'A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness.'" ( *Thompson, supra*, 6 Cal.App.5th at p. 981, quoting *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.)

Under Code of Civil Procedure, section 632, upon a party's request after trial, the court must issue a statement of decision "explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial." Here, although Topolewski requested a statement of decision, there is no indication in the record that the court issued one. However, that error is harmless where, as here, the court made the requisite factual and legal findings in its judgment. (See *F.P. v. Monier* (2017) 3 Cal.5th 1099, 1115 ["we have consistently held that factual findings and legal conclusions in the judgment satisfied the statutory requirements"].) We note that because Topolewski preserved his right to a statement of decision by requesting one, we will not apply the doctrine of implied findings, which "requires the appellate court to infer the trial court made all factual findings necessary to support the judgment." (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 58.)

## II.  *Analysis*

### A.  *Fraudulent conveyance*

Topolewski contends that the trial court erred in finding for Capitol on its first cause of action for fraudulent conveyance. We find no error.

Under the UVTA, "a transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or

11

incurred the obligation," as relevant here, "with actual intent to hinder, delay or defraud any creditor of the debtor." (§ 3439.04, subd. (a); see also *Yaesu Electronics Corp. v. Tamura* (1994) 28 Cal.App.4th 8, 13 ["A fraudulent conveyance is a transfer by the debtor of property to a third person undertaken with the intent to prevent a creditor from reaching that interest to satisfy its claim."].)

Topolewski relies heavily on the trial court's findings in favor of Northern, arguing that because the court found Northern was a bona fide purchaser of the Tuba Street property, that meant Capitol never had any right to the property. He further points to the undisputed evidence that he acted on behalf of Northern and purchased the property with Northern's funds. As a result, he contends that "there was no voidable transfer or incurring of an obligation," and Capitol failed to establish the elements of a claim under section 3439.04.

There is no dispute that, given the court's finding that Northern was a bona fide purchaser, the transfer of the Tuba Street property from Topolewski to Northern was not voidable under the UVTA. (See *Annod Corp. v. Hamilton & Samuels* (2002) 100 Cal.App.4th 1286, 1294 ["if a transfer is made both in good faith and for a reasonably equivalent value, then the transfer is not a fraudulent transfer under section 3439.04"].) The trial court found, however, that Topolewski's fraudulent filing of the satisfaction of judgment, which he undertook in order to prevent attachment of Capitol's lien after he purchased the Tuba Street property, qualified as a fraudulent transfer under the statute.

"On its face, the [UVTA] applies to all transfers. Civil Code, section § 3439.01, subdivision [(m)] defines "[t]ransfer" as "every

12

mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, license, and creation of a lien or other encumbrance." (*Mejia v. Reed* (2003) 31 Cal.4th 657, 664 [quoting former section 3439.01, subd. (i), now subd. (m)].) Further, the statute defines "asset" as "property of a debtor" (§ 3439.01, subd. (a)), and "property" as "anything that may be the subject of ownership" (§ 3439.01, subd. (j)). The potential remedies for creditors include not only "[a]voidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim," but also an attachment "against the asset transferred or other property of the transferee," an injunction against further disposition of the asset or other property, appointment of a receiver, and "[a]ny other relief the circumstances may require." (§ 3439.07, subd. (a).)

Topolewski appears to argue that the court's conclusion was error because the filing of the satisfaction of judgment was not a "transfer of real property." He also contends that because the court did not void the transfer of the property to Northern, the UVTA did not apply. But, as detailed above, the statute is far broader than he suggests. Topolewski provides no authority or further explanation why the trial court erred in concluding that his fraudulent filing and recording of the satisfaction of judgment qualified as a fraudulent transfer in order to avoid attachment of Capitol's lien during the time Topolewski held the Tuba Street property by grant deed. He therefore has forfeited any further argument. (See, e.g., *County of Butte v. Emergency Medical Services Authority* (2010) 187 Cal.App.4th 1175, 1196, fn. 7 [contention not supported by citation to legal authority is forfeited as improperly presented]; *In re S.C.* (2006) 138

13

Cal.App.4th 396, 408, citation omitted ["Where a point is merely asserted by appellant's counsel without any argument of or authority for the proposition, it is deemed to be without foundation and requires no discussion by the reviewing court."].)

Even if Topolewski's actions did not qualify as a fraudulent transfer under the UVTA, Capitol adequately established a claim for fraud. "The essential elements of fraud, generally, are (1) a misrepresentation; (2) knowledge of falsity; (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damage." (*City of Industry v. City of Fillmore* (2011) 198 Cal.App.4th 191, 211, citing *Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.) Topolewski challenges only the last element, arguing that Capitol suffered no damages because it "never had a right to a lien against the Property." We reject this contention.

Topolewski asserts that the court found that Northern, "and not Topolewski, was the purchaser." This misstates the court's findings. The court found that Northern "was a bona fide purchaser for value when it acquired title to [the Tuba Street property] by quitclaim deed recorded on October 5, 2018." But the court also found that Topolewski obtained the property by grant deed in his name, which he recorded on August 20, 2018. Moreover, the court found that Topolewski's recording of the fraudulent satisfaction of judgment prevented the attachment of Capitol's lien to the Tuba Street property when Topolewski took title.

Topolewski ignores these findings. Other than his assertion, contrary to the trial court's findings, that Capitol never had the right to a lien on the property, Topolewski offers no basis for his claim that Capitol failed to prove it was damaged. We

14

therefore affirm the court's judgment in favor of Capitol on its cause of action for fraudulent conveyance against Topolewski.

### B.    *Punitive damages*

In addition, Topolewski contends that the court's award of punitive damages was not supported by sufficient evidence of his financial condition.  We agree.

Civil Code section 3294, subdivision (a) permits an award of exemplary or punitive damages "for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice."  The purposes of punitive damages are to punish the defendant for the conduct that harmed the plaintiff and deter the commission of future wrongful acts.  (Civil Code § 3294, subd. (a); *Neal v. Farmers Insurance Exchange* (1978) 21 Cal.3d 910, 928, fn. 13 (*Neal*).)  "The ultimately proper level of punitive damages is an amount not so low that defendant can absorb it with little or no discomfort [citation], nor so high that it destroys, annihilates, or cripples the defendant. [Citations.]" (*Rufo v. Simpson* (2001) 86 Cal.App.4th 573, 621–622.)

"[A]n award of punitive damages cannot be sustained on appeal unless the trial record contains meaningful evidence of the defendant's financial condition." (*Adams v. Murakami* (1991) 54 Cal.3d 105, 109 (*Adams*).)  "[A] plaintiff who seeks to recover punitive damages must bear the burden of establishing the defendant's financial condition" (*id.* at p. 123); punitive damages may not be based on speculation (*id.* at p. 114).

The Supreme Court has not "prescribe[d] any rigid standard for measuring a defendant's ability to pay." (*Adams, supra*, 54 Cal.3d at p. 116, fn. 7.)  "Accordingly, there is no one

15

particular type of financial evidence a plaintiff must obtain or introduce to satisfy its burden of demonstrating the defendant's financial condition.  Evidence of the defendant's net worth is the most commonly used, but that metric is too susceptible to manipulation to be the sole standard for measuring a defendant's ability to pay." (*Soto v. BorgWarner Morse TEC Inc.* (2015) 239 Cal.App.4th 165, 194 (*Soto*).)  "Yet the 'net' concept of the net worth metric remains critical."  (*Ibid.*)  "'Thus, there should be some evidence of the defendant's actual wealth' [citation], but the precise character of that evidence may vary with the facts of each case [citations]." (*Id.* at pp. 194–195.) "Normally, evidence of liabilities should accompany evidence of assets, and evidence of expenses should accompany evidence of income." (*Baxter v. Peterson* (2007) 150 Cal.App.4th 673, 680 (*Baxter*).)  "The evidence should reflect the named defendant's financial condition at the time of trial." (*Soto, supra*, 239 Cal.App.4th at p. 195.)  We review the award of punitive damages for substantial evidence. (See *Baxter, supra*, 150 Cal.App.4th at p. 681.)

Topolewski argues that there was "no evidence" of his financial condition "other than that he is the one hundred percent owner of Metal Jeans which had significant earnings in 2020 and 2021 and that his net worth was in excess of $78,000."  This does not accurately summarize his testimony on his assets and earnings.  As the trial court found, Topolewski testified that he had substantial assets and earnings, including approximately $100,000 from book sales and $25,000,000 from just two years of sales from Metal Jeans, and that he currently had several million dollars in the bank account for Metal Jeans.

However, we agree with Topolewski that Capitol did not satisfy its burden of proving he had the ability to pay a punitive

16

damages award, as Capitol presented no evidence of Topolewski's liabilities or expenses. Capitol's counsel failed to question Topolewski at trial on the topic and did not ask Topolewski to produce any documents regarding his net worth. Nor did Capitol request to conduct discovery about Topolewski's financial condition after establishing a prima facie case for punitive damages. Presenting evidence about Topolewski's income and assets, alone, was insufficient to establish his financial condition or ability to pay $100,000 in punitive damages. (See *Soto, supra*, 239 Cal.App.4th at p. 195 [reversing punitive damages award where the evidence of the defendant's assets "was, at best, pertinent to only half of [the defendant's] balance sheet and therefore was not, standing alone, meaningful evidence of [the defendant's] financial condition"]; *Baxter, supra,* 150 Cal.App.4th at p. 681 [same].) Indeed, the only evidence of Topolewski's net worth was his testimony, elicited by his own attorney, that he was not insolvent and his assets exceeded $70,000. Capitol asserts that Topolewski's testimony regarding his assets and income was sufficient, but it offers no argument regarding the lack of evidence of his liabilities.

On this record, we must conclude that there was insufficient evidence of Topolewski's financial condition to enable us to make an intelligent assessment of his ability to pay a punitive damages award. Accordingly, we reverse the award of punitive damages. Where, as here, a punitive damage award is reversed based on the insufficiency of the evidence, the plaintiff is not entitled to a retrial of the issue. (See *Soto, supra*, 239 Cal.App.4th 165, 198; *Baxter, supra*, 150 Cal.App.4th at p. 681; *Kelly v. Haag* (2006) 145 Cal.App.4th 910, 919-920.)

## C.    *Amount of judgment*

Topolewski also argues that Capitol failed to offer sufficient evidence to prove the amount of the judgment and therefore that the court erred by entering it.  Curiously, Topolewski contends that no proof was offered "other than by exhibit," and notes that Capitol's witness, Framke, did not testify about the amount of the judgment.  As Topolewski acknowledges, Capitol introduced as exhibits at trial the original 2008 judgment, the renewed judgment in 2017 with additional interest, and the document recording the renewed judgment in January 2018.  The parties stipulated to these exhibits at trial and the court accepted them. Topolewski does not offer any basis to challenge these exhibits on appeal.  Moreover, he raised no objection below to the amount of the judgment or the calculation of interest, nor does he raise any specific objection supported by authority here.  He has therefore forfeited the issue. (See *Kashmiri v. Regents of University of California* (2007) 156 Cal.App.4th 809, 830, quoting *Newton v. Clemons* (2003) 110 Cal.App.4th 1, 11 ["'Generally, issues raised for the first time on appeal which were not litigated in the trial court are waived.'"]; see also *County of Butte v. Emergency Medical Services Authority, supra,* 187 Cal.App.4th at p. 1196, fn. 7; *In re S.C., supra*, 138 Cal.App.4th at p. 408, citation omitted.)

## D.    *Statement of decision*

Finally, Topolewski contends that Capitol failed to submit a proposed statement of decision as ordered by the court.  The record reveals that Capitol submitted a proposed statement of decision; indeed, Topolewski filed objections to that document. While it does not appear that the court ever signed or filed a statement of decision, Topolewski does not raise any claim of error, other than requesting "such relief as is necessary and

18

appropriate."  As such, Topolewski has forfeited a right to assert any error from the trial court's failure to issue a statement of decision.  (See *County of Butte v. Emergency Medical Services Authority, supra,* 187 Cal.App.4th at p. 1196, fn. 7; *In re S.C.*, *supra*, 138 Cal.App.4th at p. 408.)  We also note that any error would be harmless, as the judgment included the findings supporting the court's decision.  (See *F.P. v. Monier* (2017) 3 Cal.5th 1099, 1115 ["we have consistently held that factual findings and legal conclusions in the judgment satisfied the statutory requirements"].)

## DISPOSITION

The award of punitive damages is reversed.  The remainder of the judgment is affirmed.  The parties shall bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

COLLINS, J.

We concur:

CURREY, P.J.

ZUKIN, J.